UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,     Criminal Number 19-20132

    Plaintiff,     Hon. Terrence G. Berg

v.

D-2 AMBER MARIE DARGARTZ,

    Defendant.
_____/

**Government's Response Opposing
Defendant's Motion for Compassionate Release**

The defendant, Amber Marie Dargartz, was convicted and sentenced for her role in a fraud scheme. Once charged, she was released on bond. But she gathered multiple serious bond violations—including missing drug tests and failing to report her whereabouts to her pretrial services officer. Nonetheless, she now asks this Court to grant her compassionate release based on a risk of severe illness if she contracts Covid-19. But her past conduct, including while on bond in this case, shows she is unlikely to follow social distancing and other protocols. In other words, Dargartz has not shown that she is *less* likely to get Covid-19 if released than she is at the Sanilac County Jail (which currently

1

has no reported cases of Covid-19). Moreover, a § 3553(a) analysis does not warrant a further reduction in Dargartz's already heavily discounted sentence.

## Background

The defendant, Amber Dargartz, was a member of the Felony Lane Gang. The group got this moniker because part of their fraud scheme involved sending people, like Dargartz, through bank's drive-thru lanes with stolen identification.

In November and December of 2018, Dargartz and other members of the gang stole identification and other documents from victims' cars. (PSR, ¶¶ 12-18). They obtained one victim's checkbook and wrote a check to another victim. In one instance of fraud, Dargartz, posing as the victim recipient of the proceeds, drove through a Chase Bank in Novi and obtained cash. Police officers saw Dargartz's vehicle and noticed something suspicious. The officers initiated a traffic stop. Dargartz's co-conspirator, Keith Ware, was in the backseat of the car. Ware ran from the car. But the officers caught and arrested him. They also searched Dargartz's car and found evidence of the gang's

fraudulent activities, e.g., wigs, bank documents, and victims' identification cards.

The government charged Dargartz with bank fraud and identity theft. (PSR, ¶ 5). She was given bond, but did not do well. For instance, she failed to report for random drug testing, failed to report police contact, did not stay where she was required, failed to maintain contact with her pretrial services officer, and tested positive for use of fentanyl. (R.38: Petition, 120; R.55: Petition, 268). Her bond was revoked and she was placed in the Sanilac County Jail.

Dargartz eventually pleaded guilty. Her sentencing guideline range was 30 to 36 months. (PSR ¶ 84-85). The government recommended a six-month jail sentence, a significant reduction from her guideline range. This Court agreed and imposed a six-month custodial sentence. (R.62: Judgment, 317).

Dargartz's began serving that sentence when her bond was revoked, or on March 12, 2020. So her projected release date is September 7, 2020. She has been and will continue to serve that sentence at the Sanilac County Jail.

3

Like other jails and prisons, Sanilac County Sherriff's Department has taken steps to slow the spread of Covid-19 at the Sanilac County Jail. Specifically, as reported by Lieutenant Ryan McConnachie (on March 30, 2020), they have instituted the following procedures:

- *Detainees Entering the Facility*. The jail has altered its incoming medical screening procedures. All incoming detainees are screened prior to entering the jail in the sally-port garage area, including by asking screening questions and taking temperatures. If a detainee's answers to screening questions or symptoms raise any concerns, the detainee is either sent to a nearby hospital for medical clearance, or the jail's own medical staff further assess the detainee for potential admission to the jail. All newly-arriving detainees are isolated in quarantine for a period of days as a matter of course (regardless of whether they display any symptoms) in order to observe whether any symptoms present. Any detainee that does display symptoms will be quarantined for 14 days. The jail has also taken steps to reduce the number of new detainees entering the jail: new detainees are limited primarily to new arrests for violent crimes and crimes against persons. Currently, the jail is only at approximately 60% of its housing capacity.

- *Visitation*. The jail has canceled all in-person visits, for both social/family visits and attorney visits. The jail ceased social visits on approximately March 17, and ceased attorney visits on approximately March 22.

- *Sanitation*. Cleaning supplies, including disinfectant spray bottles, are provided to detainees to have inside their cells, and the spray bottles are refilled daily. In addition, jail trustees assist with wiping down surfaces in

4

      the jail several times per day.

- *Correctional Officers and Staff.* Entry to the jail is currently limited to jail staff and medical personnel. All staff are screened daily with a questionnaire and temperature check. Staff have been advised that they must self-report any symptoms of infection and not report to work if they are showing symptoms or feel sick.

- *Other.* Social programs for detainees have been canceled for the time being to assist with social distancing.

Lt. McConnachie recently (on July 1, 2020) provided an update on the jail. The inmate population remains low and far from capacity—as of July 1st, there were 88 inmates, but the jail has a capacity of 175. (In normal times, the jail has 140-150 inmates). All new detainees are placed in quarantine for 72 hours and tested for Covid-19. All staff wear masks. All inmates have masks and are encouraged to use them, particularly when in contact with staff. And all inmates have access to disinfectant for their cells and, if they cannot buy their own from the commissary, to soap.

Recently, Daragrtz sent a letter to this Court asking for compassionate release. (R.66: Motion). In that letter, she asks to be released based on the following medical conditions: (1) asthma; (2) liver disease; (3) a history of respiratory illnesses, such as bronchitis and a

5

recent hospitalization for pneumonia; and (4) methadone withdrawal. (R.66: Motion, 341-42).

Only one of these conditions, liver disease (#2), is listed in the PSR, and is described by Dargartz as "Stage II liver disease," which is a relatively minor and reversible form of liver disease. (PSR ¶¶ 59-60).[1] Sanilac County Jail medical records confirm Dargartz's liver disease. (October 3, 2019, Liver Ultrasound, attached as **Exhibit 3**). Dargartz's allegations of asthma and respiratory illnesses are not documented (self-reported or as diagnosed by medical professionals) in the Sanilac County Jail medical records. Those records do show methadone withdrawal. (March 17, 2020 Medical Sick Call, attached as **Exhibit 4**).

In Dargartz's letter to the Court, she also notes that she is making the request because she was served with a petition for adoption of her daughter. At the time of presentence interview, Dargartz explained that her seven-year-old daughter had been in temporary custody with her aunt and uncle in Bryan, Ohio since 2013. (PSR ¶ 54). Her daughter

---

[1] A liver in Stage II liver disease (also known as Fibrosis) can heal itself with proper medication and changes to lifestyle. (American Liver Foundation, *The Progression of Liver Disease*, attached as **Exhibit 1**; Walk-In-Lab, *What Are The Four Stages Of Liver Disease?*, attached as **Exhibit 2**).

was removed from her care after she was arrested by the Hancock Drug Task Force in 2013. (*Id.* at ¶ 55).

While incarcerated at Sanilac County Jail, Dargartz was involved in at least one incident with inmates. On or about March 28, 2020, Dargartz and another inmate had a verbal dispute, that resulted in a "no contact" order between Dargartz and two other inmates.

## Argument

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Quite the contrary: a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the

motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A).

*Second*, even if a defendant exhausts, she must show "extraordinary and compelling reasons" for compassionate release, § 3582(c)(1)(A), and release must be "consistent with" the Sentencing Commission's policy statements. As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, the district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the

defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, the protection of the public, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Dargartz is unable to make an administrative request to BOP for compassionate release because she is housed at the Sanilac County Jail. In other words, because she does not have an administrative remedy available, exhaustion is not an issue.

Dargart'z medical records show that she has liver disease (Stage II). And the CDC recognizes that liver disease [might increase her risk of severe illness](#) if she contracts Covid-19. But even though a defendant's heightened risk from Covid-19 in prison might, in some circumstances, satisfy the medical or age criteria in USSG § 1B1.13 cmt. n.1, Dargartz's circumstances cast doubt on whether that is true here. The *average* person may have a higher relative risk of contracting Covid-19 in a certain prison than if released among the public at large. But § 1B1.13 requires an *individualized* assessment, and an individual

9

defendant's relative risk varies widely. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *4–5 (E.D. Mich. May 15, 2020). It depends on the precautions at her prison, the number of Covid-19 cases there, whether and how much that number might increase or decrease, the prison's medical facilities, the defendant's release plan, the threat from Covid-19 in her release location, her access to medical care if released, and her willingness to abide by release restrictions and social-distancing protocols. *See id.* As of July 1, 2020, Sanilac County Jail had **_zero (0)_** confirmed inmate or staff Covid-19 cases. And as Dargartz's prior conduct shows (especially her conduct while on pretrial release), she would also be unlikely to follow basic restrictions on release – much less the CDC's social-distancing protocols. So it is hardly clear that Dargartz faces a greater risk now than she would if released. *See, e.g., United States v. Fry*, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (denied for 66-year-old man who is obese and has heart disease and high blood pressure; "To merit such compassionate release, Fry must show more than a mere speculation of the possibility of contracting the virus.").

Dargartz also alleges that the pending adoption of her seven-year-old daughter justifies her compassionate release. An "extraordinary and

10

compelling" reason can be based on family circumstances, e.g., where, absent the defendant's release, a family member would be neglected or without care. But starting in 2013 (so, essentially her entire life), Dargartz's daughter has been cared for by her step uncle and aunt. Thus, Dargartz's family circumstances do not create an "extraordinary and compelling" reason to justify her compassionate release. *United States v. Mackenzie*, 2020 WL 2104786, at *2 (D. Mass. May 1, 2020).

Even assuming that Dargartz has established an "extraordinary and compelling reason," she is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is still appropriate. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020)

11

(upholding a district court's denial of compassionate release based on the § 3553(a) factors). And here, these § 3553(a) factors disqualify her.

As explained above, Dargartz received a very significant break from her sentencing guideline range. And she has only served half of that sentence. A six-month sentence is necessary to deter Dargartz from future criminal behavior. It is also necessary to deter others from participating in the Felony Lane Gang or similar fraudulent schemes.

Providing a further reduction to Dargartz's sentence would also create an unwarranted sentencing disparity. Co-defendant Keith Ware received a within guideline 48-month sentence. While Ware was more culpable and his criminal record is worse, Dargartz's sentence is *already* 20% of the bottom of her guideline range. Cutting that reduced sentence in half would lead to an unwanted disparity.[2]

---

[2] § 3553(a)(6) describes the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Government acknowledges that Ware's criminal history (CHC VI) is different than Dargartz's criminal history (CHC II). However, the 3553(a) factors collectively are meant to avoid unwanted sentencing disparities, even after considering the impact of different criminal histories. *See* 3553(a)(1) (nature and circumstances of the offense); 3553(a)(2)(A) (need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense).

12

If the Court were inclined to grant Dargartz's request despite the Government's arguments above, the Court should order that she be subjected to a 14-day quarantine before release.

## Conclusion

Dargartz's request should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s/Paul A. Kuebler*
PAUL A. KUEBLER (NY 4268561)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9641
paul.kuebler@usdoj.gov

Dated: July 6, 2020

## **Certificate of Service**

I certify that on July 6, 2020, I electronically filed the foregoing using with the Clerk of the Court of the Eastern District of Michigan using the ECF system, and a copy will be generated by the ECF system and sent to the Attorney(s) of Record.

*/s/Paul A. Kuebler*
PAUL A. KUEBLER (NY 4268561)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9641
paul.kuebler@usdoj.gov